**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**CHERYL BOYER,**

      Plaintiff,

v.                                                                         No. CIV **02-1618 MCA/RHS**

**AAA NEW MEXICO, LLC,** and
**ROBERT STOFF**, individually and as
an employee of **AAA NEW MEXICO, LLC**,

      Defendants.

**MEMORANDUM AND OPINION AND ORDER**

**INTRODUCTION**

THIS MATTER is before the Court on *Defendants' Motion to Compel Arbitration and Stay Proceedings* filed on April 3, 2000 [Doc. No. 3]. The motion is fully briefed. [Doc. Nos. 3, 4, 9, 11.] Neither party requested oral argument or an evidentiary hearing, nor does the Court find any additional argument or evidence is necessary before resolving this matter. After careful consideration of the pleadings, attachments, and pertinent law, the Court determines that Defendants' motion should be granted and that this matter should be stayed while the case proceeds to arbitration. The Court's reasoning is set out below.

**BACKGROUND**

On December 23, 2002, Plaintiff Cheryl Boyer (Plaintiff) filed a *Complaint for Employment Discrimination, Retaliation, and Breach of Contract* against Defendant AAA

New Mexico (AAA) and individual Defendant Robert Stoff (Stoff), who was an employee with AAA. [Doc. No. 1.] The Complaint sets forth claims of hostile work environment based on alleged gender and pregnancy discrimination, retaliation, wrongful discharge, and breach of employment contract. More specifically, Plaintiff contends that she was subjected to discrimination and a hostile work environment from June to October 2001. Plaintiff also alleges that AAA and Stoff refused to allow her to return to work after Plaintiff's maternity leave. [Id. at ¶ 13.]

On November 29, 2000, Plaintiff applied for employment with AAA and began working there as of about January 2001 until October 2001. [Id.] The application form, apparently filled out by Plaintiff, states near the bottom that "[a]pplicants . . . will be required to execute a mutual arbitration agreement following a conditional offer of employment." [Doc. No. 4, Ex. A2.]

On January 2, 2001, Plaintiff signed a two and a-half page stand-alone form[1] entitled "Mutual Arbitration Agreement." [Id., Ex. A1.] It appears that Plaintiff began her employment with AAA on January 2, 2001, the same day that she signed the Mutual Arbitration Agreement. [Doc. No. 4, p. 2; Doc. No. 11, p. 3.] Plaintiff does not dispute that January 2, 2001 was her start date, or that she was asked to and did sign the Mutual Arbitration Agreement on January 2, 2001. Plaintiff does, however, assert that she never discussed the Mutual Arbitration Agreement with anyone at AAA and was given the

---

[1] The Mutual Arbitration Agreement is a separate document, rather than being included as part of an employee handbook.

agreement with a set of documents that she was told to sign before she could go to her employment training program. [Doc. No. 9, Boyer Affidavit, at ¶ 1.]

On behalf of AAA, Jan Fincher, an employee of AAA, also signed Plaintiff's Mutual Arbitration Agreement. Ms. Fincher's job title on the agreement is shown as "Secretary." [Doc. No. 4, Ex. A1.]

The Mutual Arbitration Agreement states in pertinent part that:

> I recognize that differences may arise between myself and the Employer during or following my employment, and that these difference [sic] may or may not be related to my employment. I understand and agree that by entering into this Agreement, I anticipate gaining the benefits of a speedy and impartial alternate dispute-resolution procedure.
>
> . . . .
>
> 1.   SCOPE OF ARBITRATION
>
> The Employer and I mutually consent to the resolution by binding arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my employment of its termination, that the Employer may have against me or that I may have against the Employer or against its officers, directors, employees or agents. . . . The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justifiable under applicable state or federal law.
>
> The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due claims for breach of contract or covenant, whether express or implied; tort claims, claims for discrimination, including but not limited to, race, sex, sexual harassment, sexual orientation, religion, national origin, age[,] marital status, or medical condition, handicap or disability. . . .
>
> Except as otherwise provided in this Agreement, both the Employer and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action, other than an administrative charge of discrimination to

the EEOC or similar state or local fair employment practices agency . . . in any way related to any claim covered by this Agreement.

. . . .

This Agreement shall be governed by and subject to the Federal Arbitration Act.

. . . .

### 4. CONSIDERATION

The mutual promises by Employer and me to arbitrate disputes, rather than litigate them before courts or other bodies, provide consideration for each other.

. . . .

### 6. ENTIRE AGREEMENT

It is the intent of the parties that this Agreement constitute the entire agreement of the parties . . . concerning the resolution of disputes. . . .

. . . .

### 8. RIGHT TO REVIEW AGREEMENT

I UNDERSTAND AND ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND UNDERSTAND ITS TERMS AND CONDITIONS, AND THAT I AM ENTERING INTO IT FREELY AND VOLUNTARILY, AND NOT IN RELIANCE ON ANY STATEMENTS OR PROMISES BY THE EMPLOYER OTHER THAN THOSE CONTAINED IN THIS AGREEMENT.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A TRIAL BY JUDGE OR JURY.

I FURTHER AGREE AND ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS AN D REVIEW THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL OF MY OWN

>   CHOICE, AND I HAVE AVAILED MYSELF OF THAT OPPORTUNITY
>   TO THE EXTENT I WISH TO DO SO.

[Doc. No. 4, Ex. A1] (emphasis in original). These last paragraphs, set out in large print, directly precede the signatures of Plaintiff and Ms. Fincher.

In lieu of filing an Answer, Defendants filed this motion to compel arbitration. Defendants contend that, based on the clear and comprehensive language of the Mutual Arbitration Agreement, the Court must compel arbitration of Plaintiff's employment claims. Plaintiff's opposition to the motion asserts that the Mutual Arbitration Agreement is unenforceable because it is illusory, not mutual, and lacks consideration. In support of her argument, Plaintiff virtually ignores the unequivocal language of the agreement and instead relies on terms found in a separate employee handbook. Plaintiff's opposition to the motion to compel arbitration is at best, marginal, and is rejected by the Court for the reasons set out below.

## ANALYSIS

**ARBITRABILITY OF PLAINTIFF'S CLAIMS**

It is well settled that the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*. manifests a "'liberal federal policy favoring arbitration agreements.'" Gilmer v. Interstate/ Johnson Lane Corp., 500 U.S. 20, 25 (1991) (internal citation omitted). The FAA provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Tenth Circuit similarly observes the strong federal policy favoring arbitration, and

notes that all doubts must be resolved in favor of arbitration. McWilliams v. Logicon, Inc., 143 F.3d 573, 576 (10th Cir. 1998); Dumais v. Am. Golf Corp., 150 F. Supp. 2d 1182, 1190 (D.N.M. 2001), aff'd, 299 F.3d 1216 (10th Cir. 2002). The party resisting arbitration bears the burden of demonstrating the claims at issue are unsuitable for arbitration. Gilmer, 500 U.S. at 26.

In determining whether to order a matter to arbitration, the Court employs a two-party inquiry. The Court first assesses whether a valid agreement to arbitrate exists between the parties. Dumais, 150 F. Supp. 2d at 1190. Next, the Court evaluates whether the specific dispute or claims fall within the scope of the valid agreement. Dumais v. Am. Golf Corp., 299 F.3d at 1219-20. If the Court answers both inquiries in the affirmative, the matter must be ordered to arbitration. The FAA leaves no place for the exercise of discretion by a district court under such circumstances, and instead mandates that the court stay judicial proceedings while the parties proceed to arbitration. Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985).

In addition, however, while the Tenth Circuit recognizes a presumption in favor of the arbitrability of claims, it applies that presumption only after the Court finds the existence of a valid arbitration agreement. In other words, the presumption applies in interpreting the scope of the arbitration, rather than in analyzing whether the agreement exists. Dumais, 299 F.3d at 1219-20. "[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." Id. at 1220 (quoting Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998)).

Here, Plaintiff's challenges all go to the existence of a valid agreement, rather than to whether the scope of the agreement would include the claims at issue. Indeed, the language of the agreement, if found valid and enforceable, is broad and would include all of the claims asserted by Plaintiff. Moreover, there is no question that employment discrimination claims arising under federal statutes are subject to mandatory arbitration if a court finds a valid arbitration agreement exists, and the claims fall within the scope of that agreement. See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1487 (10th Cir. 1994).

Thus, the only inquiry the Court must decide is whether there was an agreement to arbitrate by the parties, and whether that agreement is valid and enforceable. "State law principles of contract formation govern the determination of whether an agreement to arbitrate has been reached." Dumais, 150 F. Supp. 2d at 1190.

### A. Failure to Discuss the Mutual Arbitration Agreement

Although not set out separately, Plaintiff's affidavit argues that she did not discuss the content of the Mutual Arbitration Agreement she signed. It also might be inferred from her affidavit testimony that because she supposedly was given the agreement as part of other documents, she did not have an opportunity to read it before signing. Any such arguments fail to demonstrate that the Agreement is unenforceable. "Generally, a party who executes a written contract with another is presumed to know the terms of the agreement, and to have agreed to each of its provisions in the absence of fraud, misrepresentation or other wrongful act of the contracting party." Dumais, 150 F. Supp. 2d at 1191.

Here, Plaintiff agrees that she signed the document. She does not allege the presence of fraud, misrepresentation, or any wrongful act on the part of Defendants. The print nearest to her signature on the Mutual Arbitration Agreement is in capital letters and clearly states that she understands the terms of the agreement, and that she is giving up the right to a jury. The language also explicitly advises Plaintiff that she has the opportunity to consult with private counsel before signing should she choose to do so. Based on these circumstances, Plaintiff will not be excused from the Mutual Arbitration Agreement.

**B.     Whether the Mutual Arbitration Agreement is Illusory**

Plaintiff asserts that the agreement cannot be enforced or is "illusory" because it does not bind AAA to arbitration. In support of this argument, Plaintiff relies on portions of a separate employee handbook, which she contends permit AAA to unilaterally change any of its employment policies, including purportedly the Mutual Arbitration Agreement.

Plaintiff's argument has no merit. First, the language of the employee handbook, even if relevant to this inquiry, does not state what Plaintiff claims it does. Second, and more importantly, the Mutual Arbitration Agreement is a stand-alone document, and not contained within the employee handbook (even if that handbook did permit the employer to modify its provisions). The Mutual Arbitration Agreement contains no language that might be read to mean the company could unilaterally modify the agreement that was reached between Plaintiff and AAA. There is no basis for finding that the Mutual Arbitration Agreement must be read in conjunction with a separate employee handbook.

In addition, Plaintiff throws in another argument that the agreement is "illusory" because Ms. Fincher, who signed on behalf of AAA, was a district sales manager's secretary, without sufficient authority to bind the company. Plaintiff provides no legal authority for this argument, and the Court does not find it persuasive in any event. This is true, in part, because the FAA, while requiring a writing, does not likewise require the parties' signatures. 9 U.S.C. § 3; Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776-77 (2d Cir. 1995); Genesco, Inc. v. T. Kakiuchi, 815 F.2d 840, 846 (2d Cir. 1987). But see Coey v. N.M. Educators Fed. Credit Union, No. CIV 00-1613 MV/RLP [Doc. No. 56] (D.N.M. Aug. 5, 2001) (court observed that the FAA only applied if both parties signed the agreement[2]). Thus, even if the AAA had not had any employee sign the Mutual Arbitration Agreement, it is not clear that the agreement could be avoided on that basis alone.

In this case, there was a signature by AAA, even if it was the signature of someone without managerial authority. The real question is whether the parties manifested a mutual intent to arbitrate disputes arising out of Plaintiff's employment. See Tepper Realty Co. v. Mosaic Tile Co., 259 F. Supp. 688, 691 (S.D. N.Y. 1966) (the issue is "not whether the parties, like the scrivener of old, followed some talismanic formula, but whether they manifested a mutual intent to arbitrate."). The Mutual Arbitration Agreement clearly evinces Defendants' intention to arbitrate. Moreover, Plaintiff did sign the agreement and

---

[2] In support of this statement, the District Court cited a Tenth Circuit opinion, Williams v. Imhoff, 203 F.3d 758, 764 (10th Cir. 1995). However, this Court can find no reference in Williams to a discussion about whether both parties must sign an arbitration agreement before it is enforceable. Indeed, in Williams, the Circuit Court concluded that the remaining ERISA claim also should have been arbitrated.

provides no convincing argument that she did not do so knowingly and voluntarily. [Doc. No. 4, Ex. A1, pp. 2-3.]

### C. Whether the Mutual Arbitration Agreement is Not Mutual

Not only does the title of the agreement state that it is "mutual," the body of the agreement unequivocally states in more than one location that both the employee and the company are agreeing to arbitrate employment disputes. [Doc. No. 4, Ex. A1.] The Court questions the reasonableness of Plaintiff's assertion that the Mutual Arbitration Agreement should not be read to apply equally to both parties. [Doc. No. 9, p. 2.] While Plaintiff cites case law in support of her position, the cited cases have no relation to these facts, or to this particular arbitration agreement. Thus, the lack of mutuality argument also is rejected.

### D. Whether There is Lack of Consideration

New Mexico contract law requires consideration to support an enforceable contract. Romero v. Earl, 111 N.M. 789, 791 (1991). Stated differently, an enforceable contract is an exchange. Patel v. Am. Bd. of Psychiatry & Neurology, Inc., 975 F.2d 1312, 1314 (7th Cir. 1992). An arbitration agreement that is unsupported by consideration for an employee's promise to arbitrate is unenforceable. Dumais, 150 F. Supp. at 1193 (applying New Mexico contract law). However, "[o]ften, consideration for one party's promise to arbitrate is the other party's promise to do the same." Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1131 (7th Cir. 1997); Michalski v. Circuit City Stores, Inc., 177 F.3d 634, 636 (7th Cir. 1999) (employer's promise to be bound by the arbitration process serves as mutual consideration for employee's promise to do same).

Plaintiff argues that there was no bargained for promise made to her by AAA in exchange for her agreement to arbitrate. She cites several cases where the Court found lack of consideration in different arbitration clauses or agreements. Plaintiff goes so far as to say that AAA "promised nothing except that it would retain a power to terminate Ms. Boyer at will." [Doc. No. 9, p. 3.] Apparently, Plaintiff is referencing the employee handbook, rather than the clear and unequivocal Mutual Arbitration Agreement.

The Court is troubled by Plaintiff's decision to simply overlook the terms of the Mutual Arbitration Agreement, i.e., the document at issue, along with the "consideration" provision that is set out in that agreement. That provision unambiguously states that the "mutual promises by Employer and me to arbitrate disputes, rather than litigate them before courts or other bodies, provide consideration for each other." [Doc. No. 4, Ex. A1.]

Here, the Court concludes that both parties promised to arbitrate their employment claims. The Mutual Arbitration Agreement expressly states that the company is bound to arbitrate claims it might have against the employee. Thus, in exchange for Plaintiff's promise to arbitrate her claims, AAA made the same promise. Because the clear and unambiguous terms of the Mutual Arbitration Agreement require both parties to arbitrate, the Court rejects Plaintiff's argument that consideration is lacking.

## CONCLUSION

For all of the foregoing reasons, the Court will stay these judicial proceedings and order that the parties proceed to arbitration.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion to Compel Arbitration and Stay Proceedings* filed on April 3, 2000 [Doc. No. 3] is **GRANTED**, that this matter is **STAYED**, and that the parties **SHALL PROCEED TO ARBITRATION**.

**SO ORDERED**, this 11th day of August, 2003, in Albuquerque, New Mexico.

                                      **M. CHRISTINA ARMIJO**
                                      *United States District Judge*